UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| WILLIAM HARVEY MINKS, IV, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:23-CV-00052-MAS |
| ) | |
| MARTIN O'MALLEY, ) | |
| *Commissioner of SSA*, ) | |
| ) | |
| Defendant. ) | |

## ORDER

William Harvey Minks, IV ("Minks") appeals the Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. The Court addresses the parties' competing briefs and Minks's reply. [DE 13, 14, 15]. This matter is ripe for review.

## I.  FACTUAL AND PROCEDURAL HISTORY

Minks filed DIB and SSI applications on August 19, 2019, alleging disability beginning on January 1, 2017. [Administrative Transcript ("TR") at 278–80]. He alleges disability due to gout; neuropathy in the feet, legs, back, and hands; inflammation around the ankles; and pain in the chest from neuropathy. [TR at 55]. Minks's claim was denied initially on October 7, 2019, and denied upon reconsideration on December 13, 2019. [TR at 76, 99]. Administrative Law Judge

1

("ALJ") Boyce Crocker conducted a hearing on August 8, 2022, and an impartial Vocational Expert ("VE") appeared and testified.

Minks was 37 years old at the alleged onset date. He attended school until twelfth grade, and he did not obtain his GED. [TR at 36]. He worked at Walmart from 2007 until the end of 2016, at the onset of his alleged disability. [TR at 35]. When he started at Walmart in 2007 as a retail associate, he was responsible for stocking high-value electronic merchandise, which involved lifting and carrying 50–100 pounds, sometimes with assistance. [TR at 37–38]. At some point, Minks was promoted to department manager in Louisville. [TR at 38]. He held that position for two to three years before transferring to Shelbyville, Kentucky, where he managed the lawn and garden department. A few years later, he stepped down from his management position and worked in the hardware department. [TR at 39]. After about a year in that position, Minks says he began experiencing "problems" associated with his alleged disability. [TR at 39]. At or around that time, his height was 6' 7" and his weight was between 290 and 298 pounds.

During the hearing before the ALJ, Minks testified that he now weighs approximately 347 pounds. [TR at 44]. He struggles to read more than 30–40 minutes before developing a headache; his hands cramp when he writes; he is unable to stand for long periods due to pain and swelling in his feet and legs. [TR at 38–41]. He testified that is unable to do household tasks like taking out the garbage or washing dishes without succumbing to exhaustion or his feet swelling. [TR at 41].

He has not driven since 2016 due to the pain in his feet. [TR at 41]. He uses a cane whenever he walks due to balance issues and a history of falling. [TR at 45].

The ALJ questioned the VE regarding Minks's work history and residual functional capacity ("RFC"). The VE testified that Minks's past work required a light level to a heavy level of exertion, depending on the position held. [TR at 49]. The ALJ asked the VE to assume an RFC of an individual with Minks's age, education, and work history that is limited to a sedentary level of exertion. [TR at 49]. Further, the ALJ asks the VE to limit the RFC to "only occasionally climb[ing] ramps and stairs, no ladders, ropes, or scaffolds[;]" an ability to "frequently balance but only occasionally stop, kneel, and crouch, never crawl"; "avoid[ing] all exposure to unprotected heights . . . and moving machinery." [TR at 49–50]. In response, the VE testified that an individual with such limitations could not perform Minks's past relevant work. However, the VE identified unskilled sedentary work that an individual with Minks's RFC could perform, including an inspector, document clerk, or assembler.

The ALJ asked the VE if his assessment would change if an individual's RFC required him to alternate between standing and sitting every 20–30 minutes. [TR at 51]. The VE responded, "from a practical standpoint[,] that would preclude unskilled sedentary work" because employers typically only tolerate two 15-minute breaks and a 30-minute meal break. [TR 51]. Further, the VE testified that interruptions or breaks "beyond 5% of the day . . . for unskilled works [is] going to be unacceptable." [TR at 51]. Minks's attorney asked the VE whether unskilled sedentary work could

3

be performed by an individual who had to elevate their legs for at least half the work day. [TR at 52]. The VE responded that such a limitation would likely preclude unskilled sedentary work. [TR at 59].

ALJ Crocker issued an unfavorable decision on August 29, 2022. [TR at 25]. The Appeals Council denied Minks's request for review on June 12, 2023. [TR at 1]. Minks timely filed this appeal on July 27, 2023. [DE 1].

## II. LEGAL FRAMEWORK

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

4

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire record in search of facts supporting underdeveloped arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different original result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the ALJ's five-step sequential analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 416.920(a)(4). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments.

5

*Id.* at § 416.920(a)(4)(ii). In the third step, the ALJ decides whether such impairments, individually or collectively, meet an entry in the Listing of Impairments. *Id.* at § 416.920(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work. *Id.* at § 416.920(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at § 416.920(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there. *Id.* at § 416.920(a)(4).

### III. ANALYSIS

Minks asserts that reversal and remand are warranted because the ALJ violated 20 C.F.R. §§ 404.1529 and 416.929 by improperly rejecting Minks's statements regarding the limiting effects of his symptoms without adequately evaluating these subjective allegations against the medical evidence in the record. [DE 13, PageID# 907]. Minks argues that, while the ALJ summarized the treatment notes and Minks's testimony regarding symptoms, the ALJ failed to explain how Minks's subjective allegations were inconsistent with the medical evidence. [DE 13, PageID# 908].

SSR 16-3p, 2016 SSR LEXIS 4 governs the evaluation of symptoms in Title II and Title XVI disability claims. 82 Fed. Reg. at 49,462. A two-step inquiry guides an ALJ's evaluation of a claimant's symptoms. *Id.* at 49,463–64. First, he must

6

determine whether an "underlying medically determinable physical or mental impairment . . . could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* at 49,463. Second, he must examine the "intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* During the second step, the ALJ must "consider *all* the evidence presented," 20 C.F.R. § 404.1529(a), including information about [the claimant's] prior work record, [his] statements about [his] other symptoms, evidence submitted by [his] medical sources, and observations by . . . other persons[.]" *Id.* at § 404.1529(c)(3) (emphasis added). Generally, a reviewing court may only disturb these findings for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011).

Here, the ALJ complied with the first step of the analysis. ALJ Crocker stated that he considered all of Minks's reported symptoms. Specifically, the decision enumerates several subjective statements from Minks regarding his reported symptomology including that:

- He is diabetic;
- He wears diabetic shoes;
- He can only do household chores like washing dishes for only 5–10 minutes at a time;
- He rides in the car only to attend medical appointments;
- He uses the cane "everywhere" for balance;
- He had fallen twice in the two months before the hearing;
- He has back pain and diabetic neuropathy, which he treats by taking Tramadol and Pregabalin;
- His medication for back pain and neuropathy does not work well anymore;
- An impairment to his ankle makes walking difficult;
- He cannot walk for more than 30 minutes at a time;

7

- To obtain relief for his ankle pain, he must elevate his feet 15–16 hours a day;
- He has varicose veins;
- He was informed that surgery would not help his back, ankle, or varicose veins;
- He has gout that is well-controlled with medication
- He takes metformin for his diabetes, and his glucose averages 180–190;
- His Pain Questionnaire indicated that his pain was "severe, shooting and burning pain through his feet, back, legs, hands, arms, and sometimes chest."
- He has "throbbing and weakness" in his ankles; and
- Some weeks, he is not able to get out of bed due to the shooting pain.

[TR at 21]. ALJ Crocker determined that, considering the evidence in the record, Minks's medically determinable impairments could reasonably be expected to cause the symptoms Minks alleges. [TR at 21].

Minks's principal contention is that the ALJ erred at the second step of the analysis by concluding that Minks's subjective statements regarding the "intensity, persistence and limiting effects" of those symptoms are not "entirely consistent with the medical evidence and other evidence in the record[.]" [TR at 21].

When making an RFC finding, the ALJ must assess the claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3); 20 C.F.R. § 416.945(a)(3). That assessment "must include a narrative discussion describing how the evidence supports each conclusion[.]" SSR 96-8P, 1996 WL 374184 (July 2, 1996). The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Importantly, a claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled. *See* 20 C.F.R. § 404.1529(a);

8

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *Duncan v. Sec 5, of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Minks's alleged impairments include obesity, gout, diabetes, neuropathy, osteoarthritis of the left foot/ankle, varicose veins of bilateral lower extremities, plantar fasciitis, and degenerative disc disease of the lumbar spine. [TR at 19]. In connection to his impairments, Minks alleges he has severe pain that prevents him from sitting or standing for extended periods, significant swelling in his lower extremities, and that he needs to elevate his feet for most of the day. [TR at 21].

As the Commissioner correctly notes, ALJ Crocker acknowledged Minks's reported symptoms and complaints, including disc protrusions, multilevel facet arthropathy, right L5 radiculopathy, and peripheral polyneuropathies. [TR at 21]. The ALJ also noted that the claimant's obesity exacerbates his other impairments, further contributing to his functional limitations. However, the ALJ found that the objective evidence did not support the alleged intensity and severity of symptoms to support certain limitations, including the use of a cane, walking and standing limitations, and Minks's need to elevate his feet for significant hours of the day.

In addition to Minks's medical records, the ALJ also relied upon the opinions of state agency physical consultants, Drs. Frank Walker and Douglas Back. ALJ Crocker found Drs. Walker and Back's opinions were most persuasive. [TR at 22]. Both consultants, across four total examinations, determined that Minks had a "sedentary level of exertion," consistent with the ALJ's RFC determination. [TR at 22]. ALJ Crocker further explained that Exhibits 6F and 11F, medical records signed

9

by Dr. Kenneth Gravett, were unpersuasive. He noted that Exhibit 6F does not indicate any functional limitations and Exhibit 11F merely states that the claimant has trouble walking. Accordingly, he determined that Minks's use of a cane was not documented as medically necessary in the records, even though the claimant testified that he used the cane "everywhere" for balance. [TR at 21].

In sum, the ALJ's decision adequately addressed Minks's subjective allegations and addressed whether the intensity and severity of his impairments were supported by specific objective evidence, particularly Minks's treatment history and the opinions of state agency consultants following four separate examinations. While Minks contends that the ALJ's lack of specificity amounts to legal error, the ALJ's decision does not lack consideration of evidence or Minks's subjective complaints. Moreover, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004).

For these reasons, the Court does not find that ALJ Crocker committed legal error when weighing Minks's subjective complaints, the objective medical evidence, and the opinions of state agency consultants. ALJ Crocker adequately weighed the evidence under the regulations, and substantial evidence supports his conclusions.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, **IT IS ORDERED** that the final decision of the Commissioner denying the application of William Harvey Minks, IV for disability and disability insurance benefits is **AFFIRMED**.

Signed this the 12th of September, 2024.

*Matthew A. Stinnett*
MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY

11